IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JACKIE CARTER,

                             Plaintiff,                        OPINION AND ORDER

     v.

                                                       19-cv-367-wmc

SANDRA MCARDLE, JOLINDA
WATERMAN and GARY BOUGHTON,

                             Defendants.

---------------------------------------------------------------------------------------------------------------------------

JACKIE CARTER,

                             Plaintiff,

     v.

                                                              19-cv-384-wmc

SANDRA MCARDLE and JOLINDA
WATERMAN,

                             Defendants.

In these consolidated cases, plaintiff Jackie Carter, an inmate still in the custody of the Wisconsin Department of Corrections ("DOC") and previously incarcerated at the Wisconsin Secure Program Facility ("WSPF"), is asserting two claims against defendants Jolinda Waterman and Sandra McArdle. During all times relevant to these cases, Waterman was the Health Services Unit manager at WSPF, while McArdle provided health services to WSPF inmates as a nurse practitioner. In the '367 case, Carter claims that defendants violated his Eighth Amendment rights by denying him a medical mattress. In the '384 case, Carter claims that defendants violated his First Amendment rights by suspending his Pregabalin (or Lyrica) prescription in retaliation for his pursuing another lawsuit against the same defendants. Before the court are a number of motions by

defendants seeking summary judgment for failure to exhaust and on the merits of both claims.  In addition, Carter seeks appointment of counsel and review of other matters.

For the reasons that follow, the court concludes that plaintiff failed to exhaust his First Amendment retaliation claim asserted in the '384 lawsuit.  Therefore, those claims will be dismissed without prejudice.  As for the '367 lawsuit, the court agrees that no reasonable jury could find on the undisputed record that defendants were deliberately indifferent to Carter's back pain complaints, both generally and as to his specific request for a medical mattress.  Accordingly, the court will grant defendants' respective motions for summary judgment on the merits of that case.  Having concluded that summary judgment is appropriate on all of Carter's substantive claims, the court need not take up his other requests, except to conclude that appointment of pro bono counsel would not have changed the outcome of his two clear-cut claims.

## OPINION

### I.  Lack of Exhaustion

Both defendants seek judgment in their favor on the '384 claim for failing to exhaust.  Prisoners may not bring a federal claim about events in prison "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In other words, a prisoner must follow all the prison's rules for completing the grievance process.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  This includes:  (1) complying with the requirements for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all available appeals "in the place, and at the time, the

prison administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

Exhaustion is mandatory to ensure prison administrators receive a fair opportunity to resolve a grievance without any litigation. *See Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). For this reason, if a prisoner fails to comply with § 1997e(a), the court must dismiss unexhausted claims without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Even so, a prisoner's failure to exhaust constitutes an affirmative defense, meaning that a defendant must both raise and prove it. *See Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018). At summary judgment, defendant must show in particular that there is no genuine dispute of material fact as to plaintiff's failure to exhaust, and she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

As for the '384 case, both defendants acknowledge that plaintiff formally complained about Nurse Practitioner McArdle discontinuing his medications. Specifically, on May 3, 2019, plaintiff submitted an inmate complaint, identified as WSPF-2019-8127. (Davidson Decl., Ex. 1001 (dkt. #30-2) 11.)[1] In that administrative complaint, plaintiff asserted that "nurse (Sandy McArdle) terminated my (Pregablin) prescription out of pure spite." (*Id.*) The complaint continued to explain his belief that McArdle denied the prescription in response to this court requiring McArdle and Waterman to respond to his motion for an injunction in another lawsuit. (*Id.*) In an affidavit attached to that same complaint, Carter also described "nurse[] (Sandy McArdle) and health service manager

---

[1] Unless otherwise noted, the docket citations are to Case No. 19-cv-367.

(Jolinda Waterman) concerted premeditated violent attacks on my health and safety by weaponizing my medications, medical records and any and every way to maximize my pain and suffering."  (*Id.* at 12.)[2]

On May 14, 2019, the Inmate Complaint Examiner ("ICE") next recommended dismissal of the complaint, which was accepted by the Reviewing Authority on May 21, 2019.  (*Id.* at 2-4.)  Plaintiff also filed an appeal from that recommendation, which was received on May 31, 2019.  (*Id.* at 5.)  Ultimately, however, the Corrections Complaint Examiner ("CCE") recommended dismissal of that appeal on June 3, 2019, which the Secretary's delegate accepted on June 9, 2019.  (*Id.* at 6-7.)  From this review of the administrative complaint record, therefore, plaintiff appeared to exhaust this complaint on June 9, 2019.

However, Carter filed his present lawsuit on May 13, 2019, almost a full month *before* he had completed the administrative process.  While the court has in the past been willing to overlook this timing issue, the Seventh Circuit has recently made clear that "the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable."  *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (quoting *Ford v. Johnson*, 362 F.3d 395, 398–400 (7th Cir. 2004)) (emphasis added).  As such, "[a] premature lawsuit *must* be dismissed without prejudice," and the prisoner must file a new suit only "after fully exhausting administrative remedies."  *Id.* (emphasis

---

[2] Waterman further seeks summary judgment on the basis that Carter only complained about McArdle's actions.  (Waterman Opening Br. (dkt. #29) 4.)  While the subject of the complaint itself is limited to McArdle, as detailed above, Waterman is also mentioned in his complaint.  As such, if plaintiff had completed the administrative process before filing this complaint, the court would have concluded that he adequately exhausted a claim against Waterman as well.

added) (citing *Ford*, 362 F.3d at 401); *see also Staten v. Persike*, No. 20-CV-228-WMC, 2021 WL 86774, at *2 (W.D. Wis. Jan. 11, 2021) (citing *Chambers* to conclude that failure to complete the exhaustion process before filing a lawsuit warrants dismissal).

In his opposition, Carter argues that he did exhaust this claim timely, directing the court to three complaint numbers.  In addition to WSPF-2010-8127 as discussed above, plaintiff cites to WSPF-2019-7792 and -8755.  (Pl.'s Opp'n (dkt. #48) 1.)  While Carter did not provide the administrative records for these two complaints, according to the inmate complaint history report filed by defendant Waterman, *neither* complaint concerns defendants' discontinuing his Pregabalin prescription in retaliation for another lawsuit.  Instead, in the 7792 complaint filed on April 29 2019, Carter challenges a denial to see a doctor; and in the 8755 complaint filed on May 14, 2019, he complains of not being seen after vomiting blood.  (Davidson Decl., Ex. 1000 (dkt. #30-1) 10.)  Even beyond complaining about subjects unrelated to the '384 lawsuit, the timing of these complaints is problematic.  Specifically, the 8755 complaint was also submitted *after* this lawsuit was filed, albeit only one day later.  With respect to the 7792 complaint, it is improbable that Carter could have *fully* exhausted an administrative claim only pursued within roughly two weeks of the filing of his initial complaint.  On this undisputed record, therefore, defendants have demonstrated convincingly that plaintiff failed to exhaust his administrative remedies before filing the '384 lawsuit.  As such, the court will grant defendants' respective motions for summary judgment and dismiss that claim without prejudice.

Defendant McArdle also seeks summary judgment in her favor on Carter's failure

to exhaust his medical mattress claim in the '367 lawsuit for two reasons. *First*, she argues that he "did not assert Nurse McArdle's involvement in the decision to deny the provision of the medical mattress." (Def. McArdle's Opening Br. (dkt. #37) 5.) From the court's review of the administrative complaints, of which there were three concerning the denial of that mattress, while the focus of Carter's complaint was on Waterman and other members of the Special Needs Committee, McArdle was at least implicated, having allegedly referred his request to the medical committee, only to be told that the Special Needs Committee should review it.[3] (Reid Decl., Ex. (dkt. #42-1) 2.)

*Second*, and relatedly, McArdle contends that Carter failed to exhaust his specific theory of liability as presented in this lawsuit. (Def. McArdle's Opening Br. (dkt. #37) 5.) This argument is also too much on this record. As the Seventh Circuit explained in *Strong v. David*, 297 F.3d 646 (7th Cir. 2002), "in a notice pleading system," all plaintiff needed to do was "object intelligibly to some asserted shortcoming." *Id.* at 650. In other words, "the standard is whether the offender complaint would put an official on notice of the plaintiff's claim." *Wille v. Pugh*, No. 13-cv-1024-pp, 2015 WL 5254532, at *6 (E.D. Wis. Sept. 9, 2015) (citing *Strong*, 297 F.3d at 650). Here, Carter adequately complained that he was denied a medical mattress and that McArdle was involved in referring that decision to various HSU committees, even though she was not a member of the special needs committee. As explained below, while this level of involvement may well foreclose a finding of deliberate indifference as to McArdle, it does not render his claim unexhausted. *See Jones*

---

[3] As context, the Special Needs Committee is a group at the institutional level, usually consisting of the HSU Manager, Deputy Warden, Security Director, Unit Manager, a Business Office staff member and a nurse.

*v. Bock*, 549 U.S. 199, 217 (2007) ("[N]othing in the [PLRA] imposes a 'name all defendants' requirement."). As such, the court will also deny defendant McArdle's motion for summary judgment for failure to exhaust the '367 claim.

## II. Motions for Summary Judgment on the Merits of the '367 Claim

Both defendants motion for summary judgment on the merits of Carter's '367 claim has substantially more traction, since the undisputed record prevents a reasonable jury from finding either defendant was deliberately indifferent to his request for a medical mattress.

### A. Undisputed Facts

On April 9, 2018, another treatment provider at WSPF, Dr. Patterson, suggested that Carter may be a good candidate for a medical mattress, if one were allowed. However, Patterson never submitted an HSU request or recommendation on Carter's behalf. Rather, Carter submitted his own request for a medical mattress to the Special Needs Committee sometime between April 9 and April 24. At that time, Carter's request was referred back to his principal health care provider, Nurse Practitioner McArdle, because a medical mattress required "Class III authorization" from something called the "Class III Committee." While McArdle does not specifically recall *when* she submitted Carter's request, there is no dispute that: (1) McArdle eventually submitted the request; and (2) the Class III Committee ultimately denied Carter's request because he "did not meet any of the conditions for a specialized mattress according to Department of Corrections policy." (McArdle Decl. (dkt. #62) ¶ 27.)

The Class III Committee is a group of providers at the DOC's Bureau of Health Services ("BSH") in Madison, consisting of the DOC Medical Director, Assistant Medical Director and health care providers from various DOC institutions.  Nurse Practitioner McArdle would attend Class III Committee meetings if she had submitted a request for one of her patients, and she would then vote with the other committee members present on her requests and any others presented during that call.  Both the Class III and each DOC institution's Special Needs Committees may be asked to review prescriber recommendations according to DOC policies, as well as determine if a treatment plan or special need item is warranted, although certain treatments and items require Class III authorization.  As HSU Manager, Waterman was a member of the Special Needs Committee at WSPF for all times relevant to this case, but she never participated as a member of the Class III Committee.  Similarly, while Nurse Practitioner McArdle would participate as a member of the Class III Committee on occasion as described above, she was never on WSPF's Special Need Committee.

After his request was denied, Carter submitted another request to WSPF's Special Needs Committee on May 8, 2018, which was again denied because it had to be approved by the Class III Committee.  In addition, his request was found not to meet the requirements of Policy 300:07.  Specifically, that Policy lists three conditions that would justify a special mattress: decubitus ulcer/therapy, 3rd degree burns and paraplegia/quadriplegia with skin issues.  Carter does not appear to suffer from any of these conditions.  (Waterman Decl., Ex. 1003 (dkt. #52-2) 7.)

On June 12, 2018, Dr. Patterson noted that a "thicker mattress" may help Carter based on the opinion of Dr. Neuman, an off-site specialist Carter had seen the day before. However, Dr. Patterson again never submitted a request for a thicker or medical mattress to the Class III Committee on Carter's behalf. [4]   For its part, the Special Needs Committee denied the request for the same two reasons previously provided -- the Class III Committee needed to provide approval and Carter did not suffer from any of the listed conditions that would require such a use.

### B. Analysis

The Eighth Amendment extends prisoners the right to adequate medical care.  *See Estelle v. Gamble*, 429 U.S. 97 (1976).  To prevail on a claim of constitutionally inadequate medical care, therefore, an inmate must demonstrate two elements:  (1) an objectively serious medical condition and (2) a state official who was deliberately (that is, subjectively) indifferent.  *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).  Defendants seek summary judgment on the second element alone, so the court assumes without deciding that plaintiff was suffering from an objectively serious medical condition.

"Deliberate indifference" is a high standard; it not only requires proof that the official was aware a prisoner faced substantial risk of serious harm but disregarded that risk

---

[4] Defendant Waterman also points out that Policy 300:07 provides, "Double mattresses should not be used.  Use thick mattresses only.  Black or navy blue mattresses are considered thick mattresses. Double mattresses are not allowed."  Moreover, it is undisputed that all inmates at WSPF have either black or navy blue mattresses; therefore, they all are provided thick mattresses.

by consciously failing to take reasonable measures to address it.  *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).  Thus, it has become commonplace to observe that proof of negligent acts, or even grossly negligent acts is not enough, although something less than *purposeful* acts is.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  Perhaps more useful at summary judgment is focusing on the threshold for deliberate indifference, which is met where:  (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it.  *Id*. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("[T]he infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense.").

Here, while plaintiff focuses on the actions of the Special Needs Committee, he has failed to raise a genuine issue of material fact that permission from the *Class III Committee* was needed to receive a special mattress.  Moreover, it is undisputed that HSU Manager defendant Waterman was *never* a member (or even part-time participant in the proceedings of) the Class III Committee; nor does it appear that in her position, Waterman played a role -- or could have played a role -- in forwarding a request to the Class III Committee for their review.  In fairness, Waterman, as a member of the Special Needs Committee,

apparently denied his request not only on the basis that it required approval by the Class III Committee, but also based on her interpretation of the special mattress policy limiting those mattresses to inmates with medical conditions Carter does not have, there is nothing to support a finding that *her* actions violated Carter's Eighth Amendment rights.  In other words, even if properly before the court, therefore, Waterman could not be found liable for failing to approve a medical mattress since she lacked the authority to do so.  *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (explaining that a deliberate indifference claim requires a showing that the defendant was in a position to address "an impending harm easily preventable").

Defendant McArdle is arguably a somewhat closer call given that she apparently was a member of (or at least a participant in) the Class III Committee for the meeting at which Carter's eligibility for a special mattress was determined.  Still, there is no dispute that in her role as one of Carter's treatment providers, McArdle forwarded his request for a special mattress to that Committee.  While the Committee as a whole denied his request, plaintiff has failed to demonstrate that this denial reflected deliberate indifference, rather than simply a difference in opinion as to the appropriate course of care for his pain issues. *See Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) ("[A] difference of opinion among physicians on how an inmate should be treated cannot support a finding of deliberate indifference.").  Moreover, Carter offers *no* evidence that McArdle failed to support his request before the Committee, much less was deliberately indifferent to his need for it. Indeed, having taken the trouble to present Carter's request to the Committee only the *opposite* inference could appear reasonable.  If anything, this finding is only bolstered by

11

the complete record, showing defendant's McArdle's repeated efforts to treat Carter's pain more generally, including prescribing him medications and referring him to specialists. (McArdle Decl. (dkt. #62) ¶ 28.)  *See also Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (considering deliberate indifference claim in light of the full treatment record rather than only on a singular incident).

Accordingly, the court is compelled to conclude that Carter failed to present any evidence from which a reasonable jury could find either Waterman or McArdle personally acted with deliberate indifference in failing to accommodate his request for a medical mattress.

## ORDER

IT IS ORDERED that:

1) Defendant Jolinda Waterman's motion for summary judgment on the '367 case on exhaustion grounds ('367 dkt. #31; '384 dkt. #28) is GRANTED.

2) Defendant Sandra McArdle's motion for summary judgment on exhaustion grounds ('367 dkt. #39; '384 dkt. #36) is GRANTED IN PART AND DENIED IN PART.  The motion is granted as to the First Amendment retaliation claim asserted in the '367 lawsuit, but denied with respect to the Eighth Amendment claim in the '384 lawsuit.

3) Defendant Waterman's motion for summary judgment on the merits of the '384 lawsuit ('367 dkt. #52; '384 dkt. #49) is GRANTED.

4) Defendant McArdle's motion for summary judgment on the merits of the '384 lawsuit ('367 dkt. #62; '384 dkt. #59) is GRANTED.

5) Plaintiff Jackie Carter's motions for assistance in recruiting counsel and related relief ('367 dkt. ##45, 59, 67, 70; '384 dkt. ##42, 56, 64, 67) are DENIED.

6) Defendant McArdle's motion for order on her motion for summary judgment ('367 dkt. #72; '384 dkt. #69) is DENED AS MOOT.

7) The telephonic conference set for October 15, 2021, is CANCELED.

8) The '367 lawsuit is DISMISSED WITHOUT PREJUDICE. The '384 lawsuit is DISMISSED WITH PREJUDICE. The clerk's office is directed to enter judgments in defendants' favor in both cases accordingly.

Entered this 13th day of October, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge